UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**Clint Edwards,**

      Plaintiff,

     v.

**Superintendent L. LaTona,
et al.,**

      Defendants.

**DECISION and ORDER**

23-cv-6735-FPG-MJP

---

**Pedersen, M.J.** In this action under 42 U.S.C. § 1983 against correctional staff and a physician at Collins Correctional Facility, Defendants move to sever Plaintiff Clint Edwards' claims into six separate actions. The Hon. Frank P. Geraci, Jr., has referred this action to the undersigned for pretrial matters. As explained below, the undersigned denies the motion to sever without prejudice as to the claims against the correctional staff Defendants but grants the motion as to the claim against the physician Defendant.

In screening the operative amended complaint, Judge Geraci ruled that Plaintiff states claims under the Eighth Amendment to the United States Constitution based on the following allegations. (Order, ECF No. 15 at 3–6, Dec. 3, 2024 (incorporating by reference Order, ECF No. 11, May 24, 2024); *see* Am. Compl., ECF No. 12, June 14, 2024.) First, in April 2022, Defendant Poff, a deputy superintendent, failed to

1

protect Plaintiff from an assault by his cellmate, and Defendant Gentner, a correctional officer, subjected Plaintiff to excessive force in response to the cellmate assault. (ECF No. 15 at 3; *see* ECF No. 11 at 3–4, 9–11.) The underlying assault had allegedly resulted from a dispute about Plaintiff's magazines, which the cellmate had "wanted to use . . . to pleasure himself." (ECF No. 11 at 3–4.) Second, in July 2022, nine John Doe Defendant correctional officers subjected Plaintiff to excessive force because of a letter that he had sent demanding, among other things, the release of his magazines, and Defendant Whisner, a sergeant, failed to protect Plaintiff from that excessive force. (ECF No. 15 at 3; *see* ECF No. 11 at 11–12.)[1] Third, in August 2022, Defendant correctional officers Pugh, Meyer, and Tighe subjected Plaintiff to excessive force. (ECF No. 15 at 3; *see* ECF No. 11 at 12.) Fourth, in September 2022, Defendant Payne, a lieutenant, denied Plaintiff recreation for five months. (ECF No. 15 at 3; *see* ECF No. 11 at 15–16; ECF No. 12 at 12–13.) Fifth, in August or September 2022, Defendant Bushra Naz, a physician, denied Plaintiff mental-health medication. (ECF No. 15 at 3–5.) Sixth, in December 2022, Defendant LaTona, the superintendent, "ordered that the ceiling day lights . . . remain on twenty-four hours" per day because of "the number of violent incidents at Collins." (*Id.* at 5.)

---

[1] The screening order does not address whether based on the July incident Plaintiff states a retaliation claim under the First Amendment to the United States Constitution.

2

Defendants request this action's severance into six actions under Federal Rule of Civil Procedure 21 or bifurcation of trial under Federal Rule of Civil Procedure 42 because, in their view, Plaintiff's "claims arise out of separate transactions or series of transactions" and "present different facts." (Mem. of Law, ECF No. 103-2 at 4, Sept. 23, 2025; *see* Mot. to Sever, ECF No. 103, Sept. 23, 2025.) Plaintiff opposes the motion, with the assistance of appointed *pro bono* counsel, arguing that his claims concern "a pattern of unconstitutional and systematic abuse" and "share common questions of fact and law" and "overlapping evidentiary proof." (Mem. in Opp'n, ECF No. 146 at 7, Mar. 2, 2026; *see id.* at 23–24 n.9; Text Order, ECF No. 121, Nov. 12, 2025.)

As an initial matter, insofar as Defendants seek bifurcation of trial under Rule 42, the Court denies that request without prejudice. Defendants do not develop any argument for bifurcation in their memorandum of law, (*see* ECF No. 103-2), thus forfeiting any such argument, *see, e.g., In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 29 (2d Cir. 1996). In any event, Judge Geraci "will be presiding over the trial of this action and will decide how the trial proceeds." *Lightron Corp. v. Allstate Ins. Co.*, No. 1:24-CV-08452 (JGK) (SDA), 2025 WL 2656289, at *4 (S.D.N.Y. Sept. 17, 2025) (explaining that "the issue of bifurcation is best decided after the record has been fully developed during discovery").

As for severance, the Court declines, without prejudice, to sever the claims against the correctional staff Defendants because Defendants have not shown that severing those claims "is required to avoid prejudice or confusion and to promote the ends of justice." *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (quotations modified). Under Rule 21, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. In deciding whether to exercise that "broad discretion," courts consider whether the action complies with Rule 20's joinder requirements. *See Agnesini*, 275 F.R.D. at 458 (quotation modified). That rule permits joining defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Courts also consider "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Agnesini*, 275 F.R.D. at 458 (quotation modified).

Here, the parties dispute whether Plaintiff's claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). (*See* ECF No. 103-2 at 4–6; ECF No. 146 at 15–19.) Claims meet this requirement if they are "logically

4

related." *Agnesini*, 275 F.R.D. at 459. In Defendants' view, "Plaintiff's claims arise out of separate events." (ECF No. 103-2 at 11–12.) Plaintiff responds that the underlying incidents constitute "a clear timeline of systematic retaliatory abuse and deliberate indifference" and thus are sufficiently related. (ECF No. 146 at 17.)

"[L]iberally construed," Plaintiff's claims against the correctional Defendants appear logically related in that the claims concern alleged failures to protect against and respond appropriately to inmate violence and alleged retaliation for related grievances. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation modified). The events underlying these claims supposedly began in April 2022 with a cellmate assaulting Plaintiff after a dispute about Plaintiff's magazines, which the cellmate had "wanted to use . . . to pleasure himself." (ECF No. 11 at 3–4.) Correctional staff allegedly failed to protect Plaintiff from the cellmate's assault and then responded to the assault with excessive force against Plaintiff. (*See id.* at 9.) Then the July 2022 incident of excessive force was supposedly retaliation for Plaintiff's demanding the release of magazines that had been withheld from him; liberally construing Plaintiff's allegations, the withholding of magazines may be related to the April magazine-related incident. (*Id.* at 5–6; *see* ECF No. 12-1 at 12.) The August 2022 incident of excessive force occurred soon after Plaintiff grieved the July incident. (*See* ECF No. 12-1 at 15.) And the September 2022

denial of recreation resulted from a "false misbehavior report" that Plaintiff had allegedly received because of the August incident. (*See id.* at 18–21; ECF No. 146 at 18.) Finally, the superintendent decided in December 2022 to keep the lights on twenty-four hours per day because of inmate violence, which allegedly could have been avoided had correctional staff remained on "post in the unit instead of going into the hallway office to hang out." (ECF No. 12 at 14.) Liberally construing these allegations, the claims against correctional staff are logically related in that they concern failures in protecting against and responding to violence and alleged retaliation for related grievances.

The other relevant considerations also weigh against severing the claims against correctional staff into separate actions. A "question of law or fact common to" the correctional Defendants is likely to "arise," Fed. R. Civ. P. 20(a)(2)(B), because the claims identified against them in the screening order all raise issues under the Eighth Amendment. (ECF No. 15 at 3 (incorporating by reference ECF No. 11 at 9–12, 15–17); *see* ECF No. 103-2 (acknowledging "potential overlap in questions of law between the claims"); ECF No. 146 at 20.) Judicial economy weighs against severance given that the parties are more likely to settle a single action encompassing Plaintiff's claims than settle claims piecemeal; and a single action would consume fewer judicial resources than would parallel actions. *See Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502–03

(S.D.N.Y. 2013). Although Defendants assert that multiple claims would confuse a jury, (ECF No. 103-2 at 8–11), "many courts have found that any prejudice or confusion that might occur from trying . . . claims before a single jury can be remedied by a carefully drafted jury instruction." *Oram*, 979 F. Supp. 2d at 504 (quotation modified). And Defendants concede that "there may be some of Defendants' witnesses who, by virtue of their role, may be required to testify at more than one trial." (ECF No. 103-2 at 12; *see* ECF No. 146 at 28.)

Although the present circumstances are not so "exceptional" as to warrant severing the claims against the correctional Defendants, *Oram*, 979 F. Supp. 2d at 503 (quotation modified), severance may become appropriate as the John Doe Defendants are identified and discovery progresses, (*see* Text Order, ECF No. 140, Feb. 11, 2026 (setting discovery schedule concerning "inquir[y] into the identities of the John Doe Defendants" and maintaining stay on other discovery)). Accordingly, the Court declines without prejudice to sever the claims against the correctional Defendants. *See Oram*, 979 F. Supp. 2d at 505 (denying severance without prejudice given "uncertainty as to Defendants, third party witnesses and documents at this time"); *United States v. Yonkers Bd. of Ed.*, 518 F. Supp. 191, 197 (S.D.N.Y. 1981) ("Emphasizing again the preliminary procedural stage of this litigation, the motion to sever is denied without prejudice, as is true with respect to all motions to sever, to

renewal if at a later stage in the proceedings, after discovery and further development of the contentions of the parties, such relief appears appropriate.").

As for the claim against Dr. Naz, for allegedly denying Plaintiff medication, (*see* ECF No. 15 at 3–5), the Court severs the claim because it does not appear to "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the claims against correctional staff, Fed. R. Civ. P. 20(a)(2)(A). Plaintiff asserts that medical staff including Dr. Naz "could have been participating in Defendants' unconstitutional indifference towards, targeting of, and retaliation against" Plaintiff. (ECF No. 146 at 19.) Although the Court construes Plaintiff's "submissions liberally and interprets them to raise the strongest arguments that they suggest," *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 841 (2d Cir. 2022) (quotation modified), neither the operative complaint nor the memorandum opposing severance plausibly suggests a relationship between the medication denial and the correctional Defendants' alleged misconduct, (*see* ECF No. 12 at 16–18; ECF No. 146 at 10–11). Thus, the Court exercises its discretion under Rule 21 to sever the claim against Dr. Naz. *See, e.g., Nolan v. Int'l Bus. Machines Corp.*, No. 24-CV-04653 (PMH), 2025 WL 1078392, at *3 (S.D.N.Y. Apr. 10, 2025) (granting motion to sever absent "plausible basis upon which the Court could infer that the [plaintiffs'] allegations" satisfy Rule 20(a)).

Accordingly, the Court denies without prejudice the request for bifurcation of trial, grants the motion to sever with respect to the claim against Dr. Naz, and otherwise denies without prejudice the motion to sever.

The Court requests that Plaintiff's counsel inform the Court whether they wish to expand the scope of their *pro bono* appointment to cover discovery in the severed action against Dr. Naz. (*See* Text Order, ECF No. 151, Apr. 15, 2026 (noting "agree[ment] to expand the scope of [counsel's] appointment to cover all discovery in this matter").)

The Clerk of Court is respectfully directed:

    a. to open a new civil action against Dr. Naz;

    b. to place copies of the operative complaint, (ECF No. 12), and Dr. Naz's answer, (Answer, ECF No. 118, Nov. 7, 2025), in the new action as the operative pleadings;

    c. to update the docket in the new action to reflect the same attorney appearance for Dr. Naz; and

    d. to assign the new action to Judge Geraci and the undersigned.

**IT IS SO ORDERED.**

Dated:    May 6, 2026
           Rochester, NY        */s/ Mark W. Pedersen*
                                 MARK W. PEDERSEN
                                 United States Magistrate Judge